(No. 6757. December 10, 1940.)

MURRAY ESTES, Respondent, v. Dr. C. F. MAGEE, Appellant.

[109 Pac. (2d) 631.]

Rehearing denied December 10, 1940.

V. R. Clements, for Appellant.

Latham D. Moore, for Respondent.

GIVENS, J.—April 23, 1935, in his own hospital appellant performed an appendectomy upon respondent. Following the operation and upon coming out from the influence of a general anesthetic, respondent felt a sharp pain in his left heel and an examination disclosed a large blister, being a burn caused by a hot water bottle left at respondent's feet in his bed while still under the anesthetic.

Respondent was discharged from the hospital April 29th or 30th but returned every other day for treatment of the burn on his heel. About May 10th appellant advised respondent the burn was not responding to treatment as it should and it would be necessary to remove the top skin from the injury. This appellant did and for a time thereafter respondent appeared to be making a satisfactory recovery.

About the middle of May respondent informed appellant he felt he was entitled to damages for the injury he had suffered while in appellant's care, because of the burn; that he had no desire to injure appellant in any way but that by reason of his having represented appellant in legal matters was aware appellant was covered by insurance and would therefore claim damages for loss of time from work and the inconvenience and pain he had suffered because of the burn. Appellant then advised respondent to write him a letter stating his position so that appellant could forward the letter to his insurance company for adjustment. This letter[1] was

---

[1] MURRAY ESTES
Lawyer
Moscow, Idaho

May 16, 1935

Dr. C. F. Magee
    Moscow, Idaho
Dear Sir:

On the 23 day of April of this year I submitted to an abdominal operation performed by you at the Inland Empire Hospital, At that time and while still under the influence of the anesthetic I suffered a

written May 16, 1935, and during the remainder of May the injury commenced to heal quite rapidly.

About May 25, 1935, a claims representative of United States Fidelity and Guaranty Company of Baltimore, Marylant concerning advisability of settlement, and no agreement settlement of his claim, at which time respondent told him he desired opportunity for further consultation with appellant concerning advisability of settlement, and no agreement was reached. Respondent again consulted appellant and according to respondent, appellant reiterated his prior statements that the injury was only superficial and that nothing remained wrong with the heel except a few days' additional

severe burn upon my heel, as you know, and such burn was caused from a hot water bottle which had been left in my bed prior to the time when I was removed from the surgery.

Over three weeks have now passed since the above date and my heel is now in worse condition than when first burned, although it has been treated each day since that time. I have been informed that I received a third degree burn, or in other words the burn is so deep that the flesh has been burned under the skin.

I am not inclined to cause trouble unnecessarily but I believe I have been injured and damaged by an unnecessary and negligent act on the part of yourself and your hospital staff. I have suffered severe pain and inconvenience during the past three weeks and am continuing to do so. It has been necessary for me to remain away from my office even after I could have returned following the operation and in addition I have been put to various expenses directly as a result of the burn.

Upon reading the case of *Davis v. Potter*, 51 Idaho, 81, I find that a surgeon who supervises the placing of the patient in bed following an operation, is considered to be in charge of the room at that time and is liable for any act of negligence which occurs while he is present. You have admitted that you personally placed me in bed following the operation and therefore I expect to hold you liable. The full extent of the injury cannot be determined at this time because the burn is not responding to treatment, however, I wish to inform you at this time of my expectation of recovery in this matter.

I sincerely hope you will not take offense from this letter. I am honest in my statements and will do you no greater harm than is necessary for me to recover for my injuries. You undoubtedly are insured against this sort of thing so my suit will not hurt you financially.

Very truly yours,

/s/ MURRAY ESTES.

growth of skin to cover the· wound. The claims agent· returned on June 5, 1935, and respondent accepted $200 in settlement of his claim for damages, giving a release therefor.[2]

During the latter part of July, 1935, the injury again became very painful and in September, 1935, appellant told respondent there was a cheloid growth in the burn and per-

---

[2] RELEASE

I

KNOW ALL MEN BY THESE· PRESENTS, That we *Murray Estes* for the sole consideration of *Two Hundred and no/100ths ($200.00)* me dollars, to us in hand paid by *Charles Francis Magee and Inland Empire Hospital both of Moscow, Latah County, Idaho,* PAYER, the receipt whereof is hereby acknowledged, have released and discharged, and by myself, my these· presents do for ourselves, our heirs, executors, administrators and assigns release and forever discharge the Payer of and from any and all claims, demands, damages, actions, causes of action, or suits at law or in equity, of whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done by said Payer prior to and including the date hereof, and particularly on account of all injuries both as to person or property resulting, or to result, from an accident which occurred on or about the *23rd* day of *April, 1935,* at *Moscow, Idaho.*

I

We understand said Payer, by reason of agreeing to this compromise payment, admits absolutely no liability of any sort and has made no representations as to liability, and said Payor has made no agreement or promise to do or omit to do any act or thing not herein set forth,

I

and we further understand that this release is made as a compromise to avoid expense and to terminate all controversy and/or claims for injuries or damages of whatever nature, known or unknown, including future developments thereof, in any way growing out of or connected with said accident.

I

We admit that no representation of fact or opinion has been made by said Payer or anyone on his, her, or their behalf to induce this compromise with respect to the extent, nature or permanency of said injuries or as to the likelihood of future complications or recovery therefrom and that the sum paid is solely by way of compromise of a disputed claim, and that in determining said sum there has been taken

formed an operation thereon. The operation failed to correct the condition and for some time thereafter the injury remained an open sore. Appellant continued to treat the heel until the spring of 1936, at which time appellant's wife, a nurse in his hospital, advised respondent appellant could do nothing further and that respondent should consult an X-ray specialist, which he did and was given treatment, with but slight improvement. In January, 1937, respondent submitted to another operation on his heel by Dr. Armstrong and received treatment from him until August 1, 1937. The condition of the heel at the time of trial was thus described by respondent: " . . . . I can't walk now from my home to my office and back twice a day. If I do the heel is so sore it pains me at night."

April 22, 1937, respondent brought this action to recover damages for his injuries occasioned by the burn and in opposition thereto appellant set up laches and the payment of the $200 to respondent and respondent's written release (*supra*) of appellant executed in consideration thereof and consequent estoppel. The court (a jury having been mutually waived) gave judgment for respondent in the amount of $2,655 less the $200 paid.

Appellant does not deny respondent was negligently injured while in his care and admits primary liability therefor.

The controversy is as to the extent of the injury at the time the release was executed and as to what, if anything, was said or done by appellant to hide the true seriousness of the

into consideration the fact that serious and unexpected consequences might result from the present injuries, known or unknown, from said accident, and it is therefore specifically agreed that this release shall be a complete bar to all claims or suits for injuries or damages of whatsoever nature resulting or to result from said accident.

IN WITNESS WHEREOF we have hereunto set our I hand— this *fifth* my day of *June, 1935*.

CAUTION! READ BEFORE SIGNING.

/s/ MURRAY ESTES

In the presence of:

/s/ DOROTHY DEWEY

C. A. ORNDORFF                    Address *Moscow, Idaho*"

injury from respondent and thus influence him to execute the release without a fair disclosure, as to his condition, and whether or not the court erred in holding the $200 payment and the release executed by respondent in consideration thereof did not bar the action.

The trial court found:

"That for a long period of time prior to May 22, 1935, defendant had been plaintiff's personal physician and that a closer than ordinary relationship of confidence, friendship, and respect existed between the parties. That plaintiff was admitted to the Bar of the State of Idaho in June of 1933 and that defendant immediately employed plaintiff to make some collections for him, defendant, and placed his, defendant's legal affairs in plaintiff's hands and recommended prospective clients to plaintiff and in general exhibited a personal interest in plaintiff's welfare and success. That by reason thereof plaintiff had great confidence in the integrity of defendant in business as well as a physician and surgeon and that such confidence continued for a long period of time after June 5, 1935.

. . . . . . . . . . . . .

"That prior to June 5, 1935, plaintiff received no independent medical advice and was uninformed about third degree burns and probable resulting complications thereof and was induced to enter into said settlement and execute said release by the false and fraudulent representations of defendant and active concealment by defendant from plaintiff of material facts in that defendant then and there knew that he, defendant, could not at that time determine whether or not said burn would heal without complications, and could not then and there determine what treatment would be necessary before plaintiff would completely recover from said injury. That defendant then and there knew that the injury was a serious third degree burn and then and there knew that in spite of the satisfactory appearance of said injury, serious complications could and possibly would, without any intervening cause therefor, retard and prevent complete recovery, all of which knowledge was intentionally withheld from plaintiff with intent to induce plaintiff to enter into said settlement and execute said release. That shortly after said 5th

day of June, 1935, and the execution of said release, defendant admitted to plaintiff for the first time that the injury was caused by a hot water bottle burn, saying, 'Those damn fool nurses, using hot water bottles in that kind of weather.' ''

The applicable rule generally recognized and followed is that a release induced by the fraudulent, or mistaken though honest, statements by a physician representing the releasee, as to the present nature or circumstances of an injury is not binding on the releasor.

'' . . . . In denying the contention of the defendant that, before the plaintiff was entitled to rescind the release, it was necessary for him to show that he was induced to execute it by the intentional deception of the physician and claim agent, the Supreme Court of Minnesota in *Jacobson v. Chicago, M. & St. P. Ry. Co.*, 132 Minn. 181, 156 N. W. 251, L. R. A. 1916D, 144, Ann. Cas. 1918A, 355, said, among other things:

'' 'In such cases the courts grant relief either upon the ground of fraud in law, sometimes spoken of as constructive fraud, or mutual mistake. It is not material whether it be termed fraud in law or mistake; the result is the same in either case. The rule now often applied is tersely summed up by the Iowa Supreme Court in the statement that: ''A party cannot falsely assert a fact to be true and induce another to rely thereon to his prejudice, and thereafter hide behind the claim that he did not know it was false at the time he made it.'' *High v. White Way Laundry Co.*, 164 Iowa, 143, 145 N. W. 473, 50 L. R. A. (N. S.) 1091.'

''In *Granger v. Chicago, M. & St. P. Ry. Co.*, supra, [215 N. W. 576] plaintiff executed a release for a consideration of $500 in the belief, induced by the advice of the physician that ·'he was pretty well along toward being cured,' and in so doing both he and the claim agent acted under a mutual mistake of fact as to the extent of his injury and duration of his disability. In concluding that it would be most unjust to hold the release binding upon plaintiff, when he was in such a serious physical condition that the railway company did not question that $12,000 was a fair measure of damages sustained by him, the court said:

'' 'While there is a conflict in the decisions, we believe that the greater weight of authority, as well as the sounder logic,

supports the rule that a release will be avoided on the ground of mistake of fact where the doctor gave the advice in good faith believing the same to be true, as well as where he acted in bad faith for the purpose of inducing a settlement. *Jacobson v. Chicago, M. & St. P. R. Co.*, 132 Minn. 181, 156 N. W. 251, L. R. A. 1916D, 144, 147 Ann. Cas. 1918A, 355.'

"In *F. Kiech Mfg. Co. v. James*, 164 Ark. 137, 261 S. W. 24, paragraph 4 of the syllabus contains the following statement of the holding of the court on this point:

" 'Where plaintiff, injured in defendant's employment, signed release, relying on mistaken opinion of defendant's doctor that his injury was not permanent, he was not bound thereby, notwithstanding recital that he acted wholly on his own judgment as to nature and extent of injury, and that no representations were made on which he relied.' " (*Atchison, T. & S. F. Ry. Co. v. Peterson*, 34 Ariz. 292, 271 Pac. 406, 409.)

See, also, cases therein cited, and *St. Louis, I. M. & S. Ry. Co. v. Hambright*, 87 Ark. 614, 113 S. W. 803; *St. Louis-S. F. R. Co. v. Cauthen*, 112 Okl. 256, 241 Pac. 188, 48 A. L. R. 1447, annotation, p. 1462; *Serr v. Biwabik Concrete Aggregate Co.*, 202 Minn. 165, 278 N. W. 355, 117 A. L. R. 1009, annotation, p. 1022; *Missouri Pac. R. Co. v. Elvins*, 176 Ark. 737, 4 S. W. (2d) 528; *Davis v. Higgins*, 95 Okl. 32, 217 Pac. 193; *Pattison v. Seattle R. & S. Ry. Co.*, 55 Wash. 625, 104 Pac. 825; *Alenkowsky v. Texas & N. O. Ry. Co.*, (Tex. Civ. App.) 188 S. W. 956; *Malloy v. Chicago G. W. R. Co.*, 185 Iowa, 346, 170 N. W. 481; *Gulf, C. & S. F. Ry. Co. v. Huyett*, (Tex. Civ. App.) 89 S. W. 1118; *Chicago, R. I. & P. Ry. Co. v. Rogers*, 60 Okl. 249, 159 Pac. 1132; *Cowan v. El Paso Electric Ry. Co.*, (Tex. Com. App.) 271 S. W. 79; *Houston & T. C. R. Co. v. Brown*, (Tex. Civ. App.) 69 S. W. 651.

Respondent claims appellant told him: "You have nothing but a superficial injury practically well at this time (i. e. just prior to signing the release) and will be just as good as before, and will be normal within a few days." Appellant denies this, stating: "Well, we discussed the burn, it was a third degree, I knew it was a burn of third degree, and I conveyed that impression to Mr. Estes . . . . he was always solicitous as to how to proceed, and at that time it was my

opinion that it was progressing as any burn of that nature would do, of that serious nature would do.''

If appellant said and honestly meant respondent to understand the injury was of slight consequence, he was, as later events clearly demonstrated, mistaken. If such was not his honest opinion or statement, he was misrepresenting the situation to respondent. Respondent quite evidently relied on what the doctor said in consenting to such a small settlement. Thus on the one hand both were mistaken as to the condition of the burn at the time of the settlement and release, or on the other, respondent was unfairly influenced by appellant.

It is true respondent knew he had a third degree burn at the time he accepted the $200 in settlement of his claim, but there is also testimony respondent had received information only from appellant as to the seriousness of such a burn and stated, though in part denied by appellant, that appellant had told him the injury was not serious and that he would be entirely recovered in a short time. Under the above authorities, and the circumstances herein, these were more than mere opinions.

The fact that approximately $155 of the $200 was paid by respondent to appellant for the appendectomy, leaving only $45 as compensation for the burn adds weight to the court's findings that respondent did not know the seriousness of the burn and relied upon appellant's statements as to its nature and seriousness.

Conceding appellant is correct that to overthrow the release the evidence must be clear, satisfactory and convincing, this court has held that nevertheless the court, sitting without a jury as the trier of fact is the one to determine the weight of the evidence as coming up to such standard, if there is competent evidence to that effect.

'' 'The trial court is the appropriate tribunal to weigh the evidence, and determine whether it is convincing and satisfactory within the meaning of the rule. It has been said that in such cases, as in others, the determination of that court in favor of either party upon conflicting or contradictory evidence is not open to review in the appellate court.' (*Wright v. Rosebaugh, supra,* [46 Ida. 526, 269 Pac. 98]; *O'Regan v.*

*Henderson, supra,* [46 Ida. 761, 271 Pac. 423].)'' (*Parks v. Mulledy,* 49 Ida. 546, 551, 290 Pac. 205, 79 A. L. R. 934.)

Appellant contends the following finding of fact: '' . . . . That shortly after June 5, 1935, and the execution of said release, appellant admitted to respondent for the first time that the injury was caused by a hot water bottle burn''; is erroneous because ''(a) The evidence, when taken and considered as a whole, shows that respondent knew that fact a long time prior to said date; (b) Said finding is immaterial because the evidence shows that respondent knew at all times, including and after April 23, 1935, that he had sustained a third degree burn.''

The letter written by respondent to appellant clearly shows that May 16th he knew he had a third degree burn. The finding is not that respondent did not know he had a third degree burn but that prior to June 3d appellant had not admitted it. The evidence bearing on this proposition is on both sides somewhat equivocal. If, as appellant contends, the finding is immaterial we need not consider it; if it is material there is evidence supporting the finding, which would lead to the conclusion that appellant had not given respondent, up to June 5th, complete information within his knowledge with regard to the burn.

█ Where, as in this case, the party rescinding would be entitled to retain the money received even though the settlement agreement be set aside, the law does not require the return of the money paid in settlement, since the same result can be accomplished by crediting the amount paid in partial satisfaction of the judgment. (*Atchison etc. Ry. Co. v. Peterson,* 34 Ariz. 292, 271 Pac. 406; *Missouri Pac. R. Co. v. Elvins,* 176 Ark. 737, 4 S. W. (2d) 528, 532; *Collins v. Hughes & Riddle,* 134 Neb. 380, 278 N. W. 888; *St. Louis-S. F. Ry. Co. v. Cox,* 171 Ark. 103, 283 S. W. 31; *Koshka v. Missouri Pac. R. Co.,* 114 Kan. 126, 217 Pac. 293; 12 C. J. 356, sec. 58; 15 C. J. S. 767, sec. 43.)

█ The damages, amounting to $2,500 general, and $155 special damages covering costs of treatment, less the sum of $200 heretofore paid, were not excessive. (*Davis v. Potter,* 51 Ida. 81, 2 Pac. (2d) 318; *Aderhold v. Bishop,* 94 Okl. 203,

221 Pac. 752, 60 A. L. R. 137; *Hansen v. Standard Oil Co.,* 55 Ida. 483, 44 Pac. (2d) 709, and cases therein cited; *Mondine v. Sarlin,* 11 Cal. (2d) 593, 81 Pac. (2d) 903; *Milburn v. Chicago etc. R. Co.,* 331 Mo. 1171, 56 S. W. (2d) 80; annotation, 46 A. L. R. 1302.)

The record does not show any prejudice to appellant by the delay in bringing the action, barring respondent's right of recovery because of laches. (*Just v. Idaho Canal & Imp. Co.,* 16 Ida. 639, 102 Pac. 381, 133 Am. St. 140; *American Min. Co. v. Trask,* 28 Ida. 642, 156 Pac. 1136.)

The case thus hinges on a question of fact as to whether respondent was mislead to his disadvantage at the time he signed the release by positive statements of appellant or the withholding of information peculiarly within appellant's knowledge. Though extremely close and the facts and circumstances do not indicate such over-reaching as in *Bennett v. Deaton,* 57 Ida. 752, 68 Pac. (2d) 895, nevertheless, this court by the opinion in that case is committed to the doctrine that the setting aside of a release as herein, on substantial though conflicting evidence is a question of fact for the jury or the trier of fact. Adherence to that doctrine justifies the affirmance of the judgment herein, which is accordingly so ordered.

Judgment affirmed.

Costs to respondent.

Holden, J., and McDougall, Porter and Buckner, D. JJ., concur.

Ailshie, C. J., and Budge and Morgan, JJ., deeming themselves disqualified did not sit at the hearing or participate in the opinion and in their places McDougall, Porter and Buckner, D. JJ., sat.